IN THE UNITED STATES DISTRICT COURT
for the EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Samantha Calhoun, | |
| *On behalf of herself and those similarly situated*, | Case No. 5:20-cv-12661-JEL-DRG |
| Plaintiff, | Judge Judith E. Levy |
| v. | Magistrate Judge David R. Grand |
| West Road Pizza Stop, Inc., *et al.*, | |
| Defendants. | |

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

Plaintiff Samantha Calhoun asks that the Court preliminarily approve the parties' Settlement Agreement attached as Exhibit 1. The proposed Settlement Agreement resolves the collective/class-wide claims raised in this lawsuit. The parties request that the Court:

(1) Preliminarily approve the proposed settlement;

(2) Approve the content, form, and distribution of the class notice and claim form;

(3) Preliminarily approve the service award for Plaintiff;

(4) Preliminarily approve Class Counsel's request for attorneys' fees and costs; and

(5) Schedule a formal fairness hearing approximately 100 days after preliminary approval.

Respectfully submitted,


*/s/ Phil Krzeski*
Bradley K. Glazier (P35523)
Bos & Glazier, P.L.C.
990 Monroe Ave., N.W.
Grand Rapids, MI 49503
Telephone: (616) 458-6814
*bglazier@bosglazier.com*


Philip J. Krzeski (0095713)
Nathan B. Spencer (092262)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*pkrzeski@billerkimble.com*
*nspencer@billerkimble.com*

www.billerkimble.com


*Counsel for Plaintiff*

## Memorandum in Support of Plaintiff's Unopposed Motion to Preliminarily Approve Settlement

### 1. Introduction

The parties have reached a settlement that would resolve all of the claims raised in this lawsuit. Plaintiff now asks the Court for preliminary approval of the parties' Settlement Agreement, attached as Exhibit 1. [1]

### 2. Standard for Settlement Approval

Courts typically use a three-step procedure for approving settlements. *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp. 2d 985, 1026 (S.D. Ohio 2001); *see also Williams v. Vokovich*, 720 F.2d 909, 921 (6th Cir. 1983). The Court first determines whether to preliminarily approve the settlement. *Id.* Second, notice of the settlement is sent to interested persons. *Id.* And third, the Court must decide whether to finalize approval after holding a hearing. *Id.*

In evaluating an FLSA settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols.*, LLC, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair,

---

[1] The parties submit they will present a fully executed settlement agreement within 7 days of filing the Motion for Preliminary Approval. Currently, the Settlement Agreement contains only Plaintiff's signature.

reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

### 3. Background of the Lawsuit and Claims

Plaintiff Samantha Calhoun delivered food for Defendants' four Sammy's Pizza stores in the Detroit area. On August 30, 2020, Plaintiff filed this lawsuit on behalf of herself and similarly situated delivery drivers in Michigan. *See* Doc. 1. Plaintiff's Complaint alleges several wage and hour violations.

First, Plaintiff claims that Defendants under-reimbursed delivery drivers for the expenses that drivers incurred in being required to use their own cars to deliver food. Because Defendants paid the drivers at or below full minimum wage (*i.e.*, Defendants paid a tipped wage), any under-reimbursement could trigger a claim for unpaid minimum and overtime wages under the FLSA and Michigan law.

Second, Plaintiff asserts that Defendants failed to properly take a tip credit under 29 U.S.C. § 203(m). Specifically, Defendants failed to actually pay the wage rate they promised to pay, after accounting for kickbacks, and therefore cannot avail themselves of the tip credit even if they properly informed Plaintiff of it.

### 4. Summary of Settlement Terms

The settlement agreement creates a settlement fund of $190,000, inclusive of attorney's fees, expenses, and service awards. *See* Exhibit 1. Under the terms of the

Agreement, unless they decide to opt out, each class member who worked for Defendants from August 27, 2017 to October 11, 2021 will receive a share of the settlement fund.

After subtracting fees, expenses, and service awards, the remaining settlement fund will be distributed as follows: each class member will receive a prorated share based on miles driven. Ex. 1, ¶ 3.C.ii.a.

Upon preliminary approval, a Notice of Settlement (attached as Exhibit 2) will be distributed to the class members providing them with an opportunity to object or opt out before the Court considers whether to grant final approval. The Notice Period is 60 days.

As part of the settlement, Defendants agree not to oppose Plaintiff's counsel's request for a fee award of 33.33% of the common fund, advanced expenses, and a $5,000 service award for Plaintiff. The Agreement also provides that the costs of settlement administration will be deducted from the settlement fund.

### 5. The settlement provides for a fair resolution of disputed claims.

The most important factor to consider when evaluating a proposed settlement is Plaintiff's probability of success on the merits. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19. To evaluate this factor, Plaintiff will describe the facts and law underlying her two primary claims.

### 5.1.   Under-reimbursement Claim

It is undisputed that food delivery companies must pay their minimum wage workers for expenses incurred as a result of the workers using their own cars for deliveries. The real dispute is over how much Defendants should have reimbursed.

Plaintiff claims that Defendants have two options: (1) track and reimburse each drivers' actual expenses or (2) reimburse the drivers at the IRS standard business mileage rate. First Amended Complaint, Doc. 35, ¶¶ 237–242. *See, e.g., Waters v. Pizza to You*, No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 87604 (S.D. Ohio May 7, 2021); *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 191790 (S.D. Ohio Nov. 5, 2019); *Brandenburg v. Cousin Vinny's Pizza*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371 (S.D. Ohio Nov. 25, 2019). Defendants disagree with Plaintiff's allegations that they were required to reimburse at the IRS rate. Instead, Defendants argue that they are only required to "reasonably approximate" the drivers' incurred expenses for reimbursement. 29 C.F.R. § 778.217(a); FLSA 2020-12 (August 31, 2020).

Defendants reimbursed delivery drivers for their vehicle expenses by paying them a flat rate per delivery. Based on mileage data exchanged during discovery, Plaintiff alleges that Defendants reimbursed delivery drivers between $.20 and $.27 per mile. Defendants disagree with this calculation and claim that the delivery

drivers were properly reimbursed Nonetheless, Plaintiff estimates that the unpaid wages for this claim, if calculated at the IRS rate, are approximately $250,000. In addition, Plaintiff would have sought an additional 1× unpaid wages as FLSA liquidated damages and an additional 1× unpaid wages as damages under M.C.L. § 408.414.

### 5.2.  Tip Credit Notice Violation Claim

Plaintiff asserts that Defendants improperly took a tip credit for hours worked while making deliveries by failing to pay the agreed upon wage rate by under-reimbursing Plaintiffs for delivery expenses.

Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act.[2] Here, Plaintiffs allege that Defendants have failed to *actually pay* the wage rate they promised to pay, after accounting for kickbacks, and therefore cannot avail themselves of the tip credit even if they had properly informed Plaintiffs of it. *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *4 (S.D. Ohio May 17,

---

[2] (1) the amount of the cash wage that is to be paid to the tipped employee by the employer; (2) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; (3) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (4)that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.  29 C.F.R. § 531.59.

2021); *see also, e.g., Meetz v. Wis. Hospitality Grp. LLC,* No. 16-cv-1313, 2017 U.S. Dist. LEXIS 138380, at *12-14 (E.D. Wisc. Aug. 29, 2017) (explaining that an employer cannot retroactively claim a greater tip credit than they informed employees they would be claiming). The notice requirement is "strictly construed," and must be complied with even if the employee receives tips at least equivalent to minimum wage. *See, e.g., Chung v. New Silver Palace Restaurant, Inc.*, 246 F.Supp.2d 220, 229 (S.D.N.Y. Sept. 13, 2002). Maintaining that all drivers were appropriately compensated and reimbursed, Defendants, of course, disagree with Plaintiff's tip credit claim in its entirety.

The value of this claim is predicated on the under-reimbursement claim. On one hand, if Defendants could prove the reimbursement rate covered all expenses, its value would be $0. On the other, if there is a valid under-reimbursement claim, its value is approximately $60,000.

### 5.3.  Other Considerations

When evaluating settlements, courts also look at other factors, including (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; (6) the objections, if any, raised by class members; and (7) the public

interest. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20. Each factor is addressed below.

**Complexity, expense, and likely duration.** Wage and hour class and collective actions are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). This factor supports approving the proposed settlement.

**The stage of the proceedings and amount of discovery completed.** This case settled early in the proceedings, but after the parties had exchanged sufficient discovery to evaluate the strengths and weaknesses of each claim. Specifically, Defendants produced records of miles driven and records of the reimbursement payments made to delivery drivers. This data formed the basis of the parties' settlement negotiations. In light of these factors, the parties were able to properly evaluate settlement at this stage.

**The judgment of experienced trial counsel.** Plaintiff's counsel attests that, given the strengths and weaknesses of the claims and collectability, this settlement is fair, adequate, and reasonable. Plaintiff's counsel are well-versed in delivery driver cases. *See Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, at *5 (S.D. Ohio Jan. 18, 2019). Defendants' counsel are likewise experts in employment law.

**The nature of the negotiations.** The parties reached the above settlement only after substantial negotiations, which included two settlement conferences in this District.

**Any objections from class members.** This factor will be evaluated at the final approval stage.

**The public interest.** The public interest generally favors settling class action litigation. This case is no different.

### 5.4.   The payment of attorneys' fees is reasonable.

Class Counsel will apply for one third of the settlement fund as attorneys' fees ($63,333.30), plus litigation costs. Defendants have agreed not to object to this award, which is a standard amount in this type of case. *See, e.g.*, *Mullins v. Data Mgt. Co.*, No. 1:20-cv-214, 2021 U.S. Dist. LEXIS 124891, at *17 (S.D. Ohio June 21, 2021); *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *13; *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *21; *Arp v. Hohla & Wyss Ents., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *15 (S.D. Ohio Nov. 5, 2020). "One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'" *Osman v. Grube, Inc.*, No. 3:16-cv-802, 2018 U.S. Dist. LEXIS 78222, at *12 (N.D. Ohio May 4, 2018); *see also Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 U.S. Dist. LEXIS 228221, at *10-11

(N.D. Ohio July 27, 2018) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund.").[3]

Further, the Settlement Agreement is not conditioned on an award of attorneys' fees. *See* Exhibit 1, ¶ 4(B). Thus, the Court does not need to decide the issue of attorneys' fees and costs now. In any case, Class Counsel will expend additional attorneys' fees during the notice process and approval process, which could affect the Court's evaluation of the final fee award. At the final fairness hearing, the Court will be in a position to grant final approval to the fee request after taking into account any objections to the fee.

## 5.5. The incentive payment is reasonable, and similar payments are routinely awarded.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Dun & Bradstreet*, 130 F.R.D 366, 374 (S.D. Ohio 1990) (approving incentive awards to class representatives for their time and expenses incurred pursing the litigation). Such compensation for time, effort, risk, and service

---

[3] *See, e.g.*, *In re Foundry Resins Antitrust Litig.*, No. 04-md-01639, Doc. 245 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1 million dollar settlement); *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *71 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-cv-83, 2014 U.S. Dist. LEXIS 91661, at *5 (E.D. Tenn. June 30, 2014) (finding "requested counsel fee of one third is fair and reasonable and fully justified.").

does not improperly grant preferential treatment to class representatives. The settlement agreement earmarks $5,000 to Plaintiff for her work in bringing and prosecuting the case on behalf of the delivery drivers. This amount is less than the amounts awarded in similar pizza delivery driver cases.[4] Plaintiff has spent time and effort working with Class Counsel on this case. As in any case, Plaintiff bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiff's participation, this class settlement would not have occurred.

### 6. For settlement purposes, the Court should certify a class action and a collective action.

Courts throughout the country faced whether to certify a Rule 23 Class in the pizza delivery driver reimbursement context have granted class certification.[5] Likewise, Courts routinely certify FLSA collective actions in the delivery driver context.[6] Plaintiff's case is no different. For settlement purposes, Plaintiff asks the Court to certify the following hybrid Rule 23/collective Classes:

---

[4] *See Arledge*, 2018 U.S. Dist. LEXIS 179474, *6; *Mullins*, 2019 LEXIS 11019, *6; *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, *7-8; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio May 17, 2019); *Arp v. Hohla & Wyss Enterprises, LLC*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, *7 (S.D. Ohio Nov. 5, 2020).
[5] *See, e.g., McFarlin v. The Word Enterprises, LLC*, No. 16-cv-12536, 2017 U.S. Dist. LEXIS 164968 (E.D. Mich. Oct. 5, 2017); *Brandenburg*, 2018 U.S. Dist. LEXIS 189878; *Bass v. PJ COMN Acq. Corp.*, No. 09-cv-01614, 2011 U.S. Dist. LEXIS 58352 (D. Colo. June 1, 2011); *Perrin v. Papa John's Int'l Inc.*, No. 4:09-cv-01335, 2013 U.S. Dist. LEXIS 181749 (E.D. Mo. Dec. 31, 2013); *Oregel v. PacPizza, LLC*, No. C12-01454, 2014 WL 10585672 (Sup. Ct. Of Contra Costa Cnty. May 14, 2014) *Behain v. Pizza Hut, Inc.*, No. BC54145 (Sup. Ct. of L.A. Cnty. Jul. 15, 2015).
[6] *See, e.g., Bellaspica v. PJPA, LLC*, 3 F.Supp.3d 257 (E.D. Pa. 2014); *Thomas*, 2019 U.S. Dist. LEXIS 171728 (S.D. Ohio Sep. 29, 2019); *Sullivan v. PJ United, et al.*, No. 7:13-cv-01275, Dkt. 80 (N.D. Ala. Mar. 13, 2017); *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2017 U.S. Dist. LEXIS 129955 (S.D. Ohio Aug. 14, 2017); *Waters v. Pizza to You, LLC*, 2020 U.S. Dist. LEXIS 39913 (S.D. Ohio Mar. 9, 2020); *Young v. Rolling in the Dough*, No. 1:17-cv-7825, 2018 U.S. Dist. LEXIS 38533 (N.D. Ill. Mar. 8, 2018); *Meetz v. Wis. Hospitality Grp. LLC*, No. 16-cv-1313, 2017 U.S. Dist. LEXIS 138380, *5 (E.D. Wisc. Aug. 29, 2017); *Redus v. CSPH, Inc.*, No. 3:15-cv-2364, 2017

> All current and former delivery drivers employed from September 30, 2017 to October 11, 2021 at the Sammy's Pizza stores owned, operated, and/or controlled by Defendants in Michigan (the "Class").

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are common questions of law and fact common to the class; (3) the claims and defenses of the representative parties are typical to the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23 requires the Court to find that "questions of common law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

While the FLSA requires similarly-situated workers to affirmatively "opt in" before becoming a party plaintiff, Michigan law does not. *See* M.C.L. § 408.414 Consequently, plaintiffs may maintain class actions for unpaid wages under Rule 23.

---

U.S. Dist. LEXIS 73301 (N.D. Tex.); *Drollinger v. Network Global Logistics, Inc.,* No. 16-cv-00304, Dkt. 76 (D. Colo. Jan. 18, 2017); *Tegtmeier v. PJ Iowa, LC,* 208 F.Supp.3d 1012, *3-21 (S.D. Iowa Sept. 21, 2016); *Smith v. Pizza Hut, Inc.,* No. 09-cv-01632, 2012 U.S. Dist. LEXIS 56987 (D. Colo. Apr. 21, 2012); *Darrow v. WKRP Mgmt. LLC,* No. 09-cv-01613, 2012 U.S. Dist. LEXIS 24997 (D. Colo. Feb. 28, 2012); *Perrin v. Papa John's Int'l, Inc.,* No. 4:09-cv-1335, 2011 U.S. Dist. LEXIS 104059 (E.D. Mo. Sept. 14, 2011); *Wass v. NPC Int'l., Inc.,* No. 09-cv-2254, 2011 U.S. Dist. LEXIS 32761 (D. Kan. Mar. 28, 2011); *Bass v. PJCOMN Acq. Corp.,* No. 09-cv-01614, 2010 U.S. Dist. LEXIS 96335 (D. Colo. Sept. 15, 2010); *Luiken* 2010 U.S. Dist. LEXIS 61020; *Sullivan v. PJ United, Inc.,* AAA Case No. 30 20 1300 0597, at 3-10 (Clarke Sept. 23, 2015); *Linkovich v. Capital Pizza Huts, Inc.,* AAA Case No. 01-14-0001-6513, at 5-8 (Holstein Sept. 16, 2015).

11

*See McFarlin v. The Word Enterprises, LLC*, No. 16-cv-12536, 2017 U.S. Dist. LEXIS 164968 (E.D. Mich. Oct. 5, 2017) (certifying Michigan minimum wage class). Because the standard to certify a collective action is easier to meet than the Rule 23 standard, satisfying the Rule 23 standard also meets the collective action standard. Therefore, certification of a collective action is also appropriate here.

### 6.1.  Plaintiff has satisfied the four Rule 23(a) prerequisites for class certification.

#### 6.1.1. Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. "Plaintiffs need not demonstrate that it would be impossible to join all of the putative class members; rather, they need simply show that joinder would be difficult or inconvenient." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012).

During the relevant time period, over 150 delivery drivers worked for Defendants at the Sammy's Pizza store locations. This meets the numerosity requirement.

#### 6.1.2. Commonality

Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." Commonality exists "as long as the members of the class have allegedly been affected by a general policy of the

defendant, and the general policy is the focus of the litigation." *Sweet v. Gen. Tire & Rubber Co.*, 74 F.R.D. 333, 335 (N.D. Ohio 1976). Individual class members need not be identically situated to meet the commonality requirement. Rather, the "requirement is met where the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Swigart*, 288 F.R.D. at 183, *citing DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Moreover, commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question linking the class members is substantially related to the litigation's resolution. *Id.*; *see also Bacon v. Honda of American Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (commonality not required when "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue").

Here, Plaintiff maintains that the legal theories and relevant facts are common to the class because the class consists of workers that were allegedly harmed in the same way. Plaintiff has identified the following common questions of law or fact presented by their claims: (1) how much Defendants reimbursed delivery drivers for their expenses, (2) whether Defendants adequately reimbursed delivery drivers for their delivery expenses, (3) whether Defendants met the requirements for claiming a tip credit from the delivery drivers' wages, (4) the nature and extent of the drivers'

in-store work, (5) whether Defendants paid time-and-a-half overtime wages, (6) whether Defendants can dispute whether they adequately compensated drivers, and (7) what damages and liquidated damages are available to the class members as a result of Defendants' practices. Outside of the settlement context—*i.e.*, when defendants dispute class certification—courts in this district have certified a rule 23 class for nearly identical claims. *See, e.g., Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 U.S. Dist. LEXIS 189878 (S.D. Ohio Nov. 5, 2018); *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2020 U.S. Dist. LEXIS 39913 (S.D. Ohio March 9, 2020).

### 6.1.3. Typicality

Rule 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. "Typical does not mean identical, and the typicality requirement is liberally construed." *Swigart*, 288 F.R.D. at 185, *citing Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D.Ill. 1996). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.*, *citing Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996). The requirement of typicality focuses on the conduct of a defendant and whether a proposed class representative has been injured by the same

kind of conduct alleged against the defendant as other members of the proposed class. *Id.*, *citing Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 491 (S.D.Ill. 1999) ("The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)."). This is why a finding that commonality exists generally results in a finding that typicality also exists. *Violette v. P.A. Days, Inc.,* 214 F.R.D. 207, 214 (S.D. Ohio 2003). Typicality "is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Swigart*, 288 F.R.D. at 185 (internal citations omitted). Where, as here, "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Laichev v. JBM, Inc.,* 269 F.R.D. 633, 640-41 (S.D. Ohio 2008). Additionally, differences in the amount of damages allegedly owed each putative class member "is not fatal to a finding of typicality." *Id.* at 641.

Here, Plaintiff is a member of the putative class and her claims are typical of all class members' claims in that they all arise from the same courses of conduct. Plaintiff maintains that each claim in this lawsuit arises from Defendants' pay practices that were applied to all employees in the same way. Whether Defendants'

pay practices are illegal is a question answerable on a class-wide basis. "The premise of the typicality requirement is simply stated: as goes the claims of the named plaintiff, so goes the claims of the class." *Id*. at 640. If Defendants' wage and hour practices violate Michigan law as to Plaintiff, they violate Michigan law as to the putative class members; and, accordingly, the typicality requirement is met here.

### 6.1.4. Adequacy of Representatives

Rule 23(a)(4) requires that class representatives must fairly and adequately protect the interests of the class. This requirement calls for a two-pronged inquiry: (1) Do the representatives have common interests with the unnamed members of the proposed class? (2) Will the representatives vigorously prosecute the interests of the class through qualified counsel? *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). These two requirements are met here.

Plaintiff worked as a delivery driver for Defendants at both the Lebanon and Blue Ash stores. With respect to the first inquiry, because Plaintiff is challenging the same unlawful conduct and seeking the same relief as would the rest of the class members, Plaintiff's interests are aligned with those of the class members sufficient to satisfy the first prong of the adequacy requirement. *See, e.g., Swigart*, 288 F.R.D. at 186; *Smith v. Babcock*, 19 F.3d 257, n.13 (6th Cir. 1994); *Thomas v. SmithKline*,

201 F.R.D. 386, 396 (E.D. Pa. 2001). Indeed, Plaintiff's interests are essentially identical to all putative class members' interests.

With respect to the second inquiry, the proposed class representative is ready, willing, and able to fulfill their duties and have done so to date. Bos & Glazier, P.L.C. is a highly skilled and experienced employment law firm, and has the resources to successfully prosecute this action. Likewise, Biller & Kimble, LLC is well-qualified to handle this matter. This case is one of many "delivery driver lawsuits" that Plaintiff's counsel is litigating across the nation. Through those cases, counsel have litigated many of the key issues in these cases, including motions to dismiss, motions for summary judgment, and motions for class certification.[7] Thus, Plaintiff's counsel is well-versed in this area of law and the strengths and weaknesses of the claims at issue. *See Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *7-8 (stating "The Court is familiar with Class Counsel's work in this and other cases like it. The '[] delivery driver' cases require substantial expertise and firm resources to pursue. The Court agrees that Class Counsel's work in this area is exemplary…").[8] Plaintiff's counsel

---

[7] *See, e.g., Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 50403 (S.D. Ohio Mar. 26, 2019) (motion to dismiss); *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 191790 (S.D. Ohio Nov. 5, 2019) (motion for summary judgment on IRS mileage rate); *Thomas v. Papa John's Int'l, Inc.*, No. 1:17-cv-411, 2019 U.S. Dist. LEXIS 171728 (S.D. Ohio Sept. 29 2019) (contested motion for conditional certification); *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157, 2019 U.S. Dist. LEXIS 161623 (S.D. Ohio Sept. 23, 2019) (motion to dismiss); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 U.S. Dist. LEXIS 189878 (S.D. Ohio Nov. 6, 2018) (contested motion for class certification).
[8] *See also Arp*, 2020 U.S. Dist. LEXIS 207512, at *22 (stating, "[Plaintiffs' Counsel] are highly qualified and have substantial experience in federal court and class action litigation. Class Counsel has substantial experience in wage and hour litigation and "delivery driver litigation" in particular.").

has actively and vigorously pursued Plaintiff's (and the putative class members') claims in this case. Plaintiff's counsel has committed, and will continue to commit, the resources necessary to represent the putative class in this case.

### 6.2. Plaintiff has satisfied the Rule 23(b)(3) class certification requirements.

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class mechanism is superior to other methods of relief. As discussed below, both of Rule 23(b)(3)'s requirements are met in this case.

#### 6.2.1. Common questions of law and fact predominate.

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is established where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306, F.3d 1247, 1252 (2d Cir. 2002).

18

There are numerous common questions of law and fact arising out of Defendants' conduct, making this an appropriate case for resolution by means of a class action. Most notably, liability turns on what the proper reimbursement rate is for delivery drivers and whether Defendants paid that rate. These issues would be determined based on common proof, and common questions predominate in this case. *See, e.g., Swigart*, 288 F.R.D. at 186. As a result, this case is appropriate for class certification.

### 6.2.2. A class action is a superior method of adjudication.

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.

Here, there is no evidence that putative class members have any interest in maintaining this litigation in separate actions. Indeed, the relative size of the individual claims in this case makes class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an economical way. *See, e.g.,*

19

*Tedrow v. Cowles*, No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391, at *26 (holding "[a]s Plaintiffs convincingly argue, the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers."). Moreover, efficiency favors concentrating the claims in this Court, as there is no record of other, similar litigation pending in Michigan. A final resolution of Defendants' liability is also fair because the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action as the putative class is a defined size. Class certification here promotes consistent results, giving Defendants "the benefit of finality and repose." *Id.* (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

### 7. The proposed notice conforms to federal law.

The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. *See generally* Notice of Settlement attached as Exhibit 2. The notice also informs putative class members

that they may enter an appearance through counsel if the member so desires, that only those employees who file a claim form will participate in the settlement, and explains the binding effect of the release. The notice provides putative class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A), and informs potential class members that they must file an attached claim form in order to receive payment from the settlement.

The Court should direct distribution of the class notice in the manner described in the settlement agreement. The settlement agreement envisions sending the Notice by regular mail and email.

**8. The Court should set a hearing for final approval.**

The parties request that the Court set a hearing for final approval of the settlement to occur approximately 100 days after the Court grants preliminary approval of the proposed settlement. This date would allow a reasonable period for class notices to be mailed and for class members to object to or opt-out of the settlement, but would not unduly delay the case's adjudication. The timeline envisioned for administration is below:

| Time | Event |
|---|---|
| Within 14 days of preliminary approval | Defendants provide Class Counsel and the Administrator with the final list of class members, their contact information, and relevant wage and reimbursement data. |

| Within 14 days after receiving the class list | The Administrator will send the notice. |
| Within 60 days after mailing notices | Class members must either opt-out or object, if they choose either of those options. |
| Within 45 days of the notice period deadline | Plaintiff will draft and file a motion for final approval. |
| Within 60 days of the Court's final approval Order | Defendants will provide $190,000 to the Claims Administrator to fund the QSF |
| Within 60 days of the Court's final approval Order | The Claims Administrator will distribute payments to Class Members and Class Counsel |

## 9. Conclusion

Plaintiff asks the Court to enter an Order: (1) granting preliminary approval of the settlement; (2) provisionally approving Class Counsel's request for attorney's fees and costs; (3) approving Plaintiff's service award; (4) directing distribution of the Class Notice and Claim Form to class members to provide an opportunity to opt-out or object to the settlement; and (5) setting the hearing date for the final approval of the settlement.

Respectfully submitted,

*/s/ Phil Krzeski*
Bradley K. Glazier (P35523)
BOS & GLAZIER, P.L.C.
990 Monroe Ave., N.W.
Grand Rapids, MI 49503
Telephone: (616) 458-6814

22

*bglazier@bosglazier.com*

Philip J. Krzeski (0095713)
Nathan B. Spencer (092262)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*pkrzeski@billerkimble.com*
*nspencer@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

23

**Certificate of Service**

Plaintiff certifies that a copy of the foregoing will be automatically served on

all parties via the Court's ECF system.

*/s/ Phil Krzeski*
Philip J. Krzeski