IN THE UNITED STATES DISTRICT COURT
for the EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Samantha Calhoun, | |
| *On behalf of herself and those similarly situated*, | Case No. 5:20-cv-12661-JEL-DRG |
| Plaintiff, | Judge Judith E. Levy |
| v. | Magistrate Judge David R. Grand |
| West Road Pizza Stop, Inc., *et al.*, | |
| Defendants. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL

Plaintiff Samantha Calhoun asks that the Court to approve the parties' Settlement Agreement, Doc.34-1. The proposed Settlement Agreement resolves the collective/class-wide claims raised in this lawsuit. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only. The arguments in support of Plaintiff's Motion are more fully set forth in the attached memorandum.

Respectfully submitted,


*/s/ Bradley K. Glazier*
Bradley K. Glazier (P35523)
BOS & GLAZIER, P.L.C.
990 Monroe Ave., N.W.
Grand Rapids, MI 49503
Telephone: (616) 458-6814
*bglazier@bosglazier.com*

Andrew P. Kimble
(*application for admission forthcoming*)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*akimble@billerkimble.com*

*Counsel for Plaintiff*

## Memorandum in Support of Plaintiff's Unopposed Motion to Final Approve Settlement

### 1. Introduction

The parties have reached a settlement that resolves the claims raised in this lawsuit. If approved, the Agreement will resolve the claims asserted in this lawsuit on behalf of a Rule 23 class and FLSA collective class of pizza delivery drivers employed by Defendants from September 30, 2017 to October 11, 2021. Plaintiff now asks the Court for preliminary approval of the parties' Settlement Agreement, Doc. 34-1. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only.

### 2. Background and Case History

Plaintiff Samantha Calhoun delivered food for Defendants' four Sammy's Pizza stores in the Detroit area. On August 30, 2020, Plaintiff filed this lawsuit on behalf of herself and similarly situated delivery drivers in Michigan. *See* Doc. 1. Plaintiff's lawsuit asserts that Defendants failed to adequately reimburse them for the costs they incurred using their vehicle for Defendants' benefit, failed to properly claim a tip credit, and were unjustly enriched by their delivery drivers. Based on these allegations, Plaintiff sought unpaid wages, liquidated damages under the FLSA

and Michigan law, restitution of benefits conferred, costs, and attorney's fees on behalf of herself and her fellow delivery drivers.

Shortly after filing the Complaint, in January 2021, Plaintiff filed a motion for conditional certification of the FLSA collective class. Docs. 11, 16, 19.

Also in early 2021, Plaintiff served discovery on Defendants aimed at determining the hours worked by, miles driven by, and reimbursement payments paid to the company's pizza delivery drivers. Defendants refused to produce the information, so, after conferring in good faith, on May 4, 2021, Plaintiff filed a Motion to Compel Discovery. Doc. 22.

On May 25, 2022, the Court ordered the parties to attend a settlement conference with Magistrate Judge David R. Grand. Magistrate Judge Grand held settlement conferences with the parties on June 22, 2021 and on July 23, 2021. Docs. 28, 29. The settlement conferences eventually led to the settlement agreement currently before this Court. Ex. 1, Declaration of Andrew Kimble, ¶ 8.

The settlement agreement creates a settlement fund of $190,000, inclusive of attorney's fees, expenses, and service awards. *See* Doc. 34-1. Under the terms of the Agreement, unless they decide to opt out, each class member who worked for Defendants from August 27, 2017 to October 11, 2021 will receive a share of the settlement fund. After subtracting fees, expenses, and service awards, the remaining

settlement fund will be distributed as follows: each class member will receive a prorated share based on the miles they drove for Defendants during the relevant time period. Doc 34-1, ¶ 3.C.ii.

As part of the settlement, Defendants agree not to oppose Plaintiff's counsel's request for a fee award of 33.33% of the common fund, advanced expenses, and a $5,000 service award for Plaintiff. The Agreement also provides that the costs of settlement administration will be deducted from the settlement fund.

On November 18, 2021, this Court granted preliminary approval of the parties' settlement agreement. Doc. 38. The Court found that the proposed settlement fell within the "range of reasonableness," and therefore authorized the parties and the claims administrator to proceed with the notice process. *Id.* at p. 3.

On January 14, 2022, the claims administrator, Atticus Administration, LLC, sent notice to 199 class members in accordance with the parties' settlement agreement. *See* Ex. 2, Declaration of Bryn Bridley. Twenty-one notices were initially returned as undeliverable, but Atticus was able to obtain an updated address for all but two of these individuals. *Id.* at ¶ 6. As such, notice was successfully mailed to 98.49% of the class. *Id.* The notice was also successfully emailed to 145 of the class members. *Id.* at ¶ 7. None of the class members have opted out or objected to the settlement. *Id.* at ¶ 8.

### 3. Standard for Settlement Approval

Courts typically use a three-step procedure for approving class-wide settlements. *Merkner v. AK Steel Corp.*, 2011 U.S. Dist. LEXIS 157375, at *1 (S.D. Ohio Jan. 10, 2011), *see also Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021). First, the Court determines whether to preliminarily approve the settlement. *Id*. Second, notice of the settlement is sent to interested persons. *Id*. Finally, the Court must decide whether to finalize approval after holding a hearing. *Id*.

The Sixth Circuit adheres to the "federal policy favoring settlement of class actions." *Int'l Union, United Auto, Aerospace & Agr. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007); *see also Aro Corp. v. Allied Witan Co.*, 531 F.2d 1268, 1372 (6th Cir. 1976) ("Public Policy strongly favors settlement of disputes without litigation."). Class settlements conserve scarce resources that would otherwise be devoted to protracted litigation. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991); *In re Microstrategy, Inc., Sec. Litig.*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 589, 594–95 (3d Cir. 2010) (there is an "especially strong" presumption in favor of voluntary settlements "in class actions…where substantial judicial resources can be conserved by avoiding formal litigation"); Newberg §§ 11.41

4

("The compromise of complex litigation can be encouraged by the courts and favored by public policy.").

When evaluating a class action settlement, courts in the Sixth Circuit evaluate seven factors. *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894-95 (6th Cir.2019). Those factors include: (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest. *Id*. In evaluating an FLSA settlement, the Court's role "is comparable to that of a court in a settlement of a class action..." *Kritzer v. Safelite Sols., LLC*, 2012 U.S. Dist. LEXIS 74994, at *5 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id*. at *5–6. As described below, the settlement meets these standards.

The Court has already evaluated 6 of these 7 factors and found in its Order granting preliminary approval that the proposed settlement "falls within the 'range of reasonableness.'" Below, Plaintiff addresses each factor, including the one factor

that could not be evaluated at the preliminary approval stage: the reaction of absent class members.

### 3.1.    The settlement provides for a fair resolution of disputed claims.

The most important factor to consider when evaluating a proposed settlement is the Plaintiff's probability of success on the merits. *Déjà Vu,* 925 F.3d at 895. Plaintiff's success in this case was uncertain for a number of reasons.

First, Plaintiff claims that Defendants under-reimbursed delivery drivers for the expenses that drivers incurred in being required to use their own cars to deliver food. Because Defendants paid the drivers at or below full minimum wage (*i.e.*, Defendants paid a tipped wage), any under-reimbursement could trigger a claim for unpaid minimum and overtime wages under the FLSA and Michigan law.

It is well-settled that vehicle expenses are "tools of the trade," and therefore amount to an illegal kickback to the extent that they reduce the delivery drivers' effective wage rate below the legal minimum. *See, e.g., Graham v. The Word Ents. Perry, LLC*, No. 18-cv-0167, 2018 U.S. Dist. LEXIS 101769, at *12 (E.D. Mich. June 19, 2018). But, there is substantial disagreement regarding the question of how employers must calculate vehicle expenses under the FLSA and state law. Plaintiff alleged that because Defendants failed to collect records of the delivery drivers' actual expenses and reimburse based on those records, they were obligated to

reimburse at the IRS standard business mileage rate for each mile driven. *See, e.g., Waters v. Pizza to You*, No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 87604 (S.D. Ohio May 7, 2021) (granting summary judgment to plaintiff that IRS rate applies when the employer has not retained records of expenses). Defendants counter that they were not required to reimburse at the IRS rate and are instead permitted to reasonably approximate without reference to any records. *See, e.g., Kennedy v. Mountainside Pizza, Inc.*, No. 19-cv-01199-CMA-STV, 2020 U.S. Dist. LEXIS 154792, at *6 (D. Colo. Aug. 26, 2020) (holding that employers could "reasonably approximate" without keeping records of actual expenses). Depending on how the Court ruled on that question, Plaintiff's damages

Defendants reimbursed delivery drivers for their vehicle expenses by paying them a flat rate per delivery. Based on mileage data exchanged during discovery, Plaintiff alleges that Defendants reimbursed delivery drivers between $.20 and $.27 per mile. Kimble Decl., ¶ 7. Plaintiff estimates that the unpaid wages for this claim, if calculated at the IRS rate, are approximately $250,000. *Id.* In addition, Plaintiff would have sought an additional 1× unpaid wages as FLSA liquidated damages and an additional 1× unpaid wages as damages under M.C.L. § 408.414.

If the case were to proceed, Defendants would have likely disputed Plaintiff's calculations—*i.e.*, they would have claimed that the reimbursement rate was higher

than Plaintiff estimates. In addition, they would have argued that their policy was compliant with federal and state law because it resulted in a "reasonable approximation" of the drivers' expenses. Further, Defendants disputed that this claim was appropriate for either FLSA collective action certification and Rule 23 certification. Finally, even if Plaintiff prevailed, Defendants would argue that Plaintiff is not entitled to "stack" liquidated damages under the FLSA and Michigan law. As such, the value of this claim ranged from $0 to $750,000 if Plaintiff prevailed on every issue, including stacking.

Next, Plaintiff asserts that Defendants failed to properly take a tip credit under 29 U.S.C. § 203(m) by failing to actually pay the cash wage they promised to pay, after accounting for unreimbursed expenses. "When an employer fails to actually pay the cash wage that they informed their tipped employees that they would pay, the employer fails to meet the requirements for taking a tip credit." *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *4 (S.D. Ohio May 17, 2021). For this claim, Plaintiff sought the tip credit differential, *i.e.*, the difference between full minimum wage and the tipped wage rate promised, for all hours worked. The value of this claim is predicated on the under-reimbursement claim. On one hand, if Defendants could prove the reimbursement

rate covered all expenses, its value would be $0. On the other, if there is a valid under-reimbursement claim, its value is approximately $60,000.

Finally, Plaintiff asserted that Defendants were unjustly enriched by the delivery drivers by virtue of their vehicle expense reimbursement policy. The delivery drivers conferred a benefit on Defendants when they covered the costs of substantial business expenses, Defendants were aware of the benefit, and it would be unjust for Defendants to retain that benefit without compensating for it. *See, e.g.*, *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 11743, at *16 (S.D. Ohio Jan. 22, 2021) ("*Waters II*") (granting Rule 23 class certification of delivery drivers' unjust enrichment claim under Ohio law). To fully evaluate this, Plaintiff would need to see how the use of delivery driver vehicles affected Defendants' overall operations. But, Defendants contend that this claim is preempted and that the damages are covered by Plaintiff's other claims.

As it stands, Plaintiff alleges that if she proves all of her claims the delivery drivers are owed about $300,000 in unpaid wages. Considering the risk that the class could lose all claims and be awarded $0, the settlement of $190,000 is a reasonable compromise of these disputed claims.

### 3.2.    The Risk of Fraud or Collusion

The next factor to consider is whether there was fraud or collusion in reaching the settlement agreement. Prior to discussing settlement, Defendants produced records of miles driven and reimbursements paid, which provided Plaintiff with sufficient information to evaluate damages. Kimble Decl., ¶ 6. Thereafter, the parties attended two settlement conference with Magistrate Judge Grand, which did not result immediately in settlement, but set the wheels in motion for the settlement currently before the Court. *Id*. Because there is no indication that the agreement was reached through fraud or collusion, this factor supports settlement approval.

### 3.3.    The Complexity, Expense, and Likely Duration of the Litigation

Wage and hour class and collective actions are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). This case is no different. It involves complex legal questions regarding recordkeeping, reimbursement, and the tip credit. It also involves questions relating to class and collective action certification. *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *18 (S.D. Ohio July 11, 2014) (resolving issues in class actions where Plaintiffs alleged overtime claims under the FLSA and Ohio state laws is by its very nature is complicated and time consuming).  This factor supports approving the proposed settlement.

### 3.4.   The Amount of Discovery Engaged in by the Parties

This case settled relatively early, but only after substantial information was exchanged in discovery that informed the parties' positions. Defendants produced records of miles driven and records of the reimbursement payments made to delivery drivers. This data formed the basis of the parties' settlement negotiations. *See, e.g., Arp v. Hohla & Wyss Ents., LLP*, S.D.Ohio No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *12 (Nov. 5, 2020) (explaining that exchange of employer's payroll records is sufficient to evaluate the strengths and weaknesses of case). This factor supports approval of the settlement.

### 3.5.   The Opinions of Class Counsel and Class Representatives

Plaintiff's counsel attests that, given the strengths and weaknesses of the claims, this settlement is fair, adequate, and reasonable. Plaintiff's counsel are well-versed in pizza delivery driver cases. *See, e.g., Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *21 (S.D. Ohio May 17, 2021) ("Biller & Kimble, LLC have proven themselves to be highly skilled advocates for pizza delivery drivers and other workers."). Likewise, Plaintiff believes that the settlement provides a fair compromise to the class members' claims.

### 3.6.    The Reaction of Absent Class Members

The only factor Plaintiff was unable to address at the preliminary approval stage was the reaction of absent class members. Now that the notice period is complete, Plaintiff can address this factor—none of the 199 class members opted out or objected to the settlement. *See* Exhibit 2. Based on Plaintiff's counsel's communications with class members, the reaction to the settlement has been overwhelmingly positive. As such, this factor, like all of the others, weighs in favor of settlement approval.

### 3.7.    The Public Interest

The public has an interest in resolving complex class actions, which require significant Court resources that could be allocated to other matters. Moreover, the public has an interest in ensuring that minimum wage workers receive a just and speedy resolution to claims for unpaid wages. Both weigh in favor of approving the settlement. Because all factors favor approval, the Court should grant final approval. *See, e.g., Mullins v. Data Mgt. Co.*, No. 1:20-cv-214, 2021 U.S. Dist. LEXIS 124891, at *16 (S.D. Ohio June 21, 2021).

### 4.    Certification of a Settlement Class is Appropriate

Next, Plaintiff seeks final certification of this action as an FLSA collective action and a Rule 23 class action. Plaintiff explained why FLSA collective action and

Rule 23 class certification is appropriate in their Motion for Preliminary Approval and incorporate those arguments herein. *See* Doc. 34, pp. 12-23. In short, Plaintiff meets the requirements for FLSA collective action certification because the delivery drivers who make up the FLSA collective class are "similarly situated" in that they were all subject to the same or similar compensation policies by Defendants. *See* 29 U.S.C. 216(b). Plaintiff meets the requirements for Rule 23 class certification because the class is sufficiently numerous to make joinder impracticable, there are common questions of law and fact applicable to the entire class, the class representative's claims are typical of the claims asserted by the rest of the class members, the class representative and her counsel are able to adequately represent the interests of the class, the questions relevant to the class predominate over individualized questions that might apply to the class members, and the class action procedure is superior to other methods for adjudicating this case. *See* Fed. R. Civ. P. 23(a); (b)(3). Defendants consent to class/collective action certification for settlement purposes only. The Court has already held that the proposed class meets the requirements for certification of a settlement class under Rule 23. Doc. 38, ¶ 4. Plaintiffs ask that the Court finally certify the class/collective action for settlement purposes.

13

The Notice process completed by the parties meets the requirements for Rule 23(c)(2) and 23(e)(1). Following the courts entry of preliminary approval preliminary approval, the parties employed a professional claims administrator (Atticus Administration, LLC) to send a notice of settlement to the putative class members. 98.49% of the 199 class members received the notice. Ex. 2, ¶ 6. This notice process meets the requirements stated in Rule 23(c)(2). *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *9 (S.D. Ohio Nov. 25, 2019) (finding that 96.5% of the class receiving notice was an excellent result). None of the class members have opted out or objected to the settlement.

**5. The payment of attorneys' fees and costs is reasonable.**

Class Counsel requested and was granted provisional approval for one-third of the settlement fund as attorneys' fees, or $63,333.30.

When assessing the reasonableness of a fee petition in a class action, district courts engage in a two-part analysis. *See McConnell*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *14. First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id*. Second, the court analyzes the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

**5.1.   The Court should adopt the percentage-of-the -fund approach.**

The Court must decide if it will award fees based on either the "percentage-of-the-fund" or "lodestar." *Arp*, 2020 U.S. Dist. LEXIS 207512, at *15. "This flexible approach allows the Court to account for the unique and varied circumstances present in each class action. *Id*. at *16.

"Absent compelling reasons to the contrary, courts prefer the percentage-of-the-fund method, as it best reflects the FLSA's employee-protection objective." *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 26005, at *10 (S.D. Ohio Feb. 9, 2022) ("*Waters III*").[1] The "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *McConnell,* 2021 U.S. Dist. LEXIS 97576, at *15, *quoting Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *11 (S.D. Ohio Sep. 20, 2019). It is therefore, the "preferred" method in this district. *Id.* at *17. "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class[.]" *McConnell*, 2021 U.S. Dist. LEXIS 97576, at *15 (citation omitted). "While the lodestar approach incentivizes

---

[1] In wage cases, the "compelling circumstances" that justify the lodestar method usually involve a situation where the employees' damages are relatively small. In such a circumstance, counsel can accrue fees many times greater than the value of the underlying claims. It is essential to the proper functioning of wage laws that lawyers who undertake these cases be compensated for these efforts. This is the type of "compelling circumstance" that argues in favor of applying a lodestar method in a wage and hour class/collective action settlement. *See Arp*, 2020 U.S. Dist. LEXIS 207512, n. 1 (*citing Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 615 (6th Cir. 2021)).

attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead rewards counsel for success and penalizes it for failure." *Id*.

Plaintiff asks the Court to adopt the percentage-of-the-fund approach and award class counsel 1/3 of the settlement fund in attorneys' fees.

### 5.2.   The *Ramey* Factors

Next, the Court must evaluate the requested fee itself. An award of one-third "is a normal fee amount in a wage and hour case." *Brandenburg*, No. 3:16-cv- 516, 2019 U.S. Dist. LEXIS 204371, at *14; *see also, e.g., Daoust v. Maru Restaurant, LLC,* No. 17-cv-13879, 2019 U.S. Dist. LEXIS 111222, at *13 (E.D. Mich. July 3, 2019) ("Class Counsel's request for one-third of the fund to cover their fees and costs is reasonable and consistent within the norms of class litigation in this circuit."); *Scobey v. GM, Ltd. Liab. Co.,* No. 20-12098, 2021 U.S. Dist. LEXIS 207917, at *13 (E.D. Mich. Oct. 28, 2021) (awarding 1/3 of FLSA settlement); *Davis v. Omnicare, Inc.,* No. 5:18-CV-142, 2021 U.S. Dist. LEXIS 63014, at *36-37 (E.D.Ky. Mar. 30, 2021) ("the proposed award of one-third of the gross settlement fund is reasonable given the awards in prior similar actions, the complexity of this litigation, and the public interest in incentivizing attorneys to take on the risk of pursuing actions for alleged wage violations…"); *McConnell*, 2021 U.S. Dist. LEXIS 97576 at *21; *Arp*, 2020

U.S. Dist. LEXIS 207512, at *15. This case presents no unusual circumstances that would justify deviating from the typical award.

Courts in this district also consider the six *Ramey* factors to ensure the attorneys' fee award is reasonable: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *11 (*citing*, *Ramey*, 508 F.2d 1188, 1196). In evaluating these factors, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *McConnell*, 2021 U.S. Dist. LEXIS 97576, at *17. Here, each of these factors weighs in favor of granting the requested fee.

First, the settlement results in a substantial benefit to the class. Plaintiff calculated that the unpaid wages of the class members for all claims are approximately $300,000, assuming Plaintiff prevails on all legal issues. The parties' settlement agreement requires Defendants to pay more than 60% of unpaid wages. This is an excellent result considering there was a chance the class could have lost

altogether. *Compare Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11,2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, *20 (N.D. Ohio Mar. 8, 2010) (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average."). This factor supports the granting of the requested fee award.

Second, there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and "the societal benefit is particularly acute in wage and hour cases brought on behalf of minimum wage workers." *Arp*, 2020 U.S. Dist. LEXIS 207512, *17-18. "The attorneys who take on class action cases enable this." *Id.* (*citing Moore v. Aerotek, Inc.*, 2017 U.S. Dist. LEXIS 102621, *26-27 (S.D. Ohio June 30, 2017)). Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* (citation omitted). This factor supports the requested fee award.

18

Third, class counsel's services were provided on a contingency fee basis. *See* Kimble Decl. ¶12. This factor supports the requested fee award.

Fourth, while a lodestar cross-check is not required,[2] it supports the requested attorneys' fees award. Class counsel worked a total of 139.8 hours on this case thus far, for a total lodestar of $42,064.50, for an average hourly rate of $300.89 per hour. *See* Kimble Decl. ¶13. Class counsel's work included investigating the case, drafting and filing the complaint and motions for FLSA conditional certification, drafting and filing a motion to compel, evaluating payroll records for settlement purposes, preparing for settlement conferences, and conducting discovery. Given the case's size, complexity, and difficulty, the hours expended, total lodestar, and average hourly rate are reasonable. *See, e.g., McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19 (approving the same rates proposed here for Biller & Kimble's attorneys).[3]

If it would assist the Court, Class Counsel can make their time records available for the Court's review. Given the voluminous nature of those records and time it would take to compile and review those records, Class Counsel suggest that such a detailed review is not necessary here. "In determining fee awards, courts should not 'become green-eyeshade accountants[,]' but instead must content

---

[2] *Arp*, 2020 U.S. Dist. LEXIS 207512, at *18.
[3] *See also, e.g., Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *17; *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19; *Chrismon v. Meadow Greens Pizza*, No. 5:19-CV155, 2020 WL 3790866, *5 (E.D.N.C. July 7, 2020); *Hawkins v. Middle Tenn. Pizza*, No. 3:21-cv-00266, 2022 U.S. Dist. LEXIS 21838, at *3 (M.D. Tenn. Jan. 19, 2022).

themselves with 'rough justice[.]" *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 618 (6th Cir. 2021).

Class counsel's work will continue after final approval. "Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19. This further supports a lodestar cross-check in this case.

In addition to the many hours worked on this particular case, Biller & Kimble have also worked many thousands of hours developing substantial expertise in wage and hour cases throughout the country, which have informed and enhanced their representation of Plaintiff in this case. *See Mullins*, 2019 U.S. Dist. LEXIS 11019, 2019 WL 275711, at *5 (discussing Biller & Kimble's substantial experience in federal courts and class action litigation); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *18 (S.D. Ohio Oct. 3, 2018) (noting class counsel's "substantial experience in wage-and-hour litigation"). This work "substantially enhanced" the result that class counsel was able to achieve here. *See Arp*, 2020 U.S. Dist. LEXIS 207512, at *21 (noting that is proper to consider work on similar cases in considering lodestar crosscheck)

20

As such, the lodestar multiplier of 1.5× is reasonable and falls within the acceptable range. *See Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19 (approving lodestar multiplier of 5.29). "[G]iven the nature of a contingent fee, a multiplier is generally necessary to attract competent counsel to take on the risk and expense of representing workers who are unable to afford representation on an hourly basis. This is particularly true in wage cases like this one, which are inherently complex, difficult, and expensive to litigate. The Court notes that the employer-defendant was represented by highly competent and skilled counsel. Employee-plaintiffs require equally proficient representation." *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *20.

Fifth, as discussed throughout this Motion, wage and hour class/collective actions are "inherently complex." *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *5. This factor supports approval of the requested fee award. This case involves novel and complex factual scenarios and issues of law. The complexity involved in navigating this action supports the requested fee award.

Sixth, both the class and Defendants are represented by skilled and experienced counsel. As noted above, Class Counsel Biller & Kimble, LLC and Bos

& Glazier, PLC have substantial experience with employment and wage and hour litigation. Defendants' counsel likewise is a skilled and experienced employment litigator. This factor supports the requested fee award.

Since all the *Ramey* factors support the requested fee award, Plaintiff requests the Court award class counsel 1/3 of the settlement fund as attorneys' fees.

### 5.3. Class Counsel's request for reimbursement of advanced litigation expenses and the administration expenses should be approved.

Class Counsel also seeks reimbursement of advanced litigation expenses and administration costs. *See* 29 U.S.C. § 216(b); Fed. R. Civ. P. 23(h). In this case, Class Counsel has incurred a total of $570 in litigation costs and expenses, which Class Counsel advanced. *See* Kimble Decl., ¶ 16. These costs relate to filing fee and service of process. Plaintiff's litigation costs and expenses are reasonable and should be approved.

In addition to the amount of litigation expenses, Class Counsel also asks that the Court approve the costs requested by Atticus Administration, LLC related to administering the settlement and sending notice to the class members. This amount is $8,471. This amount is reasonable and should be approved.

6. **The incentive payment is reasonable, and similar payments are routinely awarded.**

Finally, Plaintiff requests a $5,000 incentive/service award for herself. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Dun & Bradstreet*, 130 F.R.D 366, 374 (S.D. Ohio 1990) (approving incentive awards to class representatives for their time and expenses incurred pursing the litigation); *Neal v. Hallsons of Leb., Inc.*, No. 1:20-cv-00672, 2022 U.S. Dist. LEXIS 42664, at *5 (S.D. Ohio Mar. 2, 2022) (approving an incentive award to a class representative for the risk involved in being a class representative to future employment). In the context of wage and hour cases, incentive awards help further the public policies underlying laws like the Fair Labor Standards Act. *Dillow v. Home Care Network, Inc.*, 2018 U.S. Dist. LEXIS 170579, at *20 (S.D. Ohio Oct. 3, 2018). Incentive awards account for the fact that "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such

23

information through a simple internet search, this risk is very real." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *21.

The settlement agreement earmarks $5,000 to Plaintiff for her work in bringing and prosecuting the case on behalf of other delivery drivers at Defendants' restaurants. Plaintiff decided to bring this case not just on behalf of herself, but also for the benefit of more than other delivery drivers who worked for Defendants. Plaintiff undertook this lawsuit knowing that it could have potentially negative implications for her employment with Defendants and her employment elsewhere. In addition to taking on this personal risk, Plaintiff spent substantial time and effort working with Class Counsel during this case. Plaintiff assisted her counsel in analyzing Defendants' records and preparing for settlement conferences. As in any case, Plaintiff bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiff's participation, this class settlement would not have occurred. Plaintiff asks the Court to approve the service fee award of $5,000. The $5,000 incentive award is in line with the amounts awarded in similar cases. *Neal,* 2022 U.S. Dist. LEXIS 42664, at *5 (approving $5,000 incentive award on $112,500 settlement); *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *16-17 (awarding $10,000 incentive award); *McConnell*, 2021 U.S. Dist. LEXIS 97576, at *21-22 ($10,000); *Casteel v. Antonio's Pizza, Inc.*, No. 1:18- cv-1277, Doc. 52 (N.D. Ohio

24

May 17, 2019) (awarding $10,000 incentive award in $750,000 settlement); *see also Dorn v. Eddington Sec., Inc.,* No. 08 Civ. 10271(LTS), 2011 U.S. Dist. LEXIS 156546, at *19 (S.D.N.Y. Sept. 21, 2011) (finding service award of $10,000 to the plaintiffs in a FLSA and state law wage class action was reasonable, stating "such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.").

## 7. Conclusion

In light of the foregoing, Plaintiff asks the Court to enter an Order:

(1) granting final approval of the settlement;

(2) certifying this case as a Rule 23 class and FLSA collective class for settlement purposes;

(3) approving Class Counsel's request for attorney's fees and costs;

(4) approving the Claims Administrator's costs; and

(5) approving the service award to Plaintiff; and

(6) ordering the parties to otherwise carry out the settlement agreement according to its terms. To facilitate administering and completing the settlement process, Plaintiffs ask that the Court retain jurisdiction over the settlement.

Respectfully submitted,


*/s/ Bradley K. Glazier*
Bradley K. Glazier (P35523)
BOS & GLAZIER, P.L.C.
990 Monroe Ave., N.W.
Grand Rapids, MI 49503
Telephone: (616) 458-6814
*bglazier@bosglazier.com*

Andrew P. Kimble
(*application for admission forthcoming*)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*akimble@billerkimble.com*


*Counsel for Plaintiff*

26

**Certificate of Service**

Plaintiff certifies that a copy of the foregoing will be automatically served on

all parties via the Court's ECF system.


*/s/ Bradly K. Glazier*
Bradley K. Glazier

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Samantha Calhoun, | |
| *On behalf of herself and those similarly situated*, | Case No. 5:20-cv-12661-JEL-DRG |
| Plaintiff, | Judge Judith E. Levy |
| v. | Magistrate Judge David R. Grand |
| West Road Pizza Stop, Inc., *et al.*, | |
| Defendants. | |

## ANDREW KIMBLE'S DECLARATION IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL

I, Andrew Kimble, hereby declare under penalty of perjury and pursuant to 28 U.S.C. § 1746, as follows,

1.      I make this declaration in support of Plaintiff's Unopposed Motion for Final Settlement Approval. I am familiar with the facts set forth herein, and, if called to do so, I could testify competently to them.

2.      I am a partner of Biller & Kimble, LLC.

3.      Our firm originally brought this case on behalf of Samantha Calhoun. Ms. Calhoun was a delivery driver at one of Defendants' Sammy's Pizza restaurants. Plaintiff alleged that she and all of Defendants' delivery drivers were denied minimum wages because Defendants failed to

adequately reimburse them for their vehicle expenses. As a result, Defendants took an unlawful "kickback" from the drivers' wages in violation of the FLSA and Michigan law, failed to properly claim a tip credit, and were unjustly enriched by their drivers.

4.     Our firm is co-counsel on this matter with Bradley Glazier, of Bos & Glazier, PLC. He is currently admitted to practice in the Eastern District of Michigan. I am not currently admitted to practice in the Eastern District of Michigan but intend to seek admission as soon as I have received an up-to-date certificate of good standing from the state of Ohio. Up until recently, two former members of my firm, who are admitted to practice in the Eastern District of Michigan, Philip Krzeski and Nathan Spencer, were counsel of record on this case and responsible for its prosecution. Both recently left Biller & Kimble to take different jobs. I was directly involved in this case because I supervised Mr. Krzeski and Mr. Spencer, consulted with them about the developments in the case, and worked with them to create a strategy in the case. As a result, I am submitting this declaration because I have firsthand knowledge of the work our firm performed to achieve the settlement in this case.

5.     Soon after filing this case, Plaintiff moved for collective action certification in their Motion to Send Notice of this Action to Similarly Situated Employees. Doc. 11. Plaintiff also sought discovery from Defendants regarding her claims. Because Defendants refused to produce discovery, Plaintiff filed a Motion to Compel discovery. Both motions were still pending when the parties reached their settlement agreement.

6.     This settlement was a result of substantial investigation, data analysis, arm's length negotiations, and contested litigation. In order to evaluate the delivery drivers' claims, our firm evaluated records provided by Defendants of the delivery drivers miles driven and reimbursements

paid. We also conducted background investigations on Defendants, including the individual defendant's involvement with the business as an employer. The data we received and reviewed was sufficient for us to gauge the case's strengths, weaknesses, and potential damages. Given the risk of going forward, I believe this settlement represents a good result for the class members.

7.      Based on our analysis of Defendants' mileage and reimbursement records, Plaintiff estimates that Defendants reimbursed their delivery drivers between $.20 and $.27 per mile, on average.

8.      The parties attended two settlement conferences with Magistrate Judge Grand. The parties were not able to reach a settlement during the conference, but the settlement conferences started the conversations that resulted in the settlement currently before the Court.

9.      As it stands, the Settlement Agreement creates a fund of $190,000. While this is a discount on Plaintiffs' total possible damages, the settlement is a fair compromise of contested claims. Everyone will be paid out of the settlement fund unless they object or opt out. No one has objected. No one opted out of the settlement. Thus, this settlement will provide relief to all of the class members.

10.      Pursuant to the Settlement Agreement, the parties retained a Settlement Administrator, Atticus Administration, LLC (the "Administrator") to distribute the Notice of Settlement and the Settlement Fund.

11.      According to the Administrator, notice was sent to 199 class members by U.S. Mail. Only 2 notices were returned as undeliverable without a forwarding address. Notice was also sent to 145 class members by email. No class member objected, and no class member opted out.

12.    Our firm agreed to represent Plaintiff under a contingency fee arrangement, and we have not received any compensation for work we have performed to date or reimbursement for any expenses.

13.    As part of their normal practice, Plaintiffs' Counsel creates and maintains contemporaneous records of their billable time worked on cases, including this one. Based on the information from counsels' records, as of March 28, 2022, Biller & Kimble, LLC's attorneys and staff worked 139.80 hours on this case. In total, the cumulative lodestar of Biller & Kimble is currently approximately $42,064.50. The break down by timekeeper is as follows:

| Timekeeper | Rate | Hours | Lodestar |
|---|---|---|---|
| Andy Biller | $600.00 Per Hour | .7 | $420 |
| Andrew Kimble | $550.00 Per Hour | 2.5 | $1,375.00 |
| Riley Kane | $250.00 Per Hour | 3.3 | $570.00 |
| Phillip Krzeski | $350.00 Per Hour | 72.4 | $25,310.00 |
| Nathan Spencer | $350.00 Per Hour | 30.4 | $10,640.00 |
| BK Paralegal | $150.00 Per Hour | 17.8 | $2,670.00 |
| BK Law Clerk | $85.00 Per Hour | 12.70 | $1,079.50 |
| Totals | | **139.80** | $42,064.50 |

I believe that the time spent on this case, given its size, complexity, and nature is reasonable. We can make our detailed task-by-task billing records available. To do so, however, would require a substantial investment of time to review those records, redact where appropriate, and edit if needed (*i.e.*, correct misspellings, grammar errors, etc., and provide any necessary clarifications).

14.    Biller & Kimble, LLC has expended thousands of hours on similar wage and hour cases that informed our representation of Plaintiffs here. *Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, *15 (S.D. Ohio Jan. 18, 2019).

15.    After the submission of this Declaration, our firm's work on this case will continue. In my experience, the post-settlement approval work can be significant. We will oversee the

distribution of settlement payments under the terms of the Settlement Agreement. We will also continue to communicate with Class Members about the status of the Settlement. It is common for class members to call with questions and ask us to resolve issues with delivering their checks.

16.     To date, our firm has incurred $570 in litigation costs. The expenses are itemized below:

| Date | Expense | Amount |
|------|---------|--------|
| 10/1/2020 | Filing Fee | $400 |
| 10/29/2020 | Service of Process | $170 |
| **Total** | | **$570** |

These costs were reasonable expenditures incurred to advance the class's interests.

17.     In addition, the claims administrator, Atticus Administration, LLC, estimates that it will incur a total of $8,471 to administer the settlement. This includes the sending of the settlement notice, the calculation of settlement awards, sending a reminder text message after approval is granted, and distributing the individual settlement awards.

18.     My hourly rate is $550. I believe that this rate is reasonable because of my years of experience, complexity of the practice area, expertise in this type of case, and my track record of success in wage and hour litigation. Courts have approved my rate of $550 as reasonable in past wage and hour cases. *See, e.g., Neal v. Hallsons v. Leb., Inc.*, 2022 U.S. Dist. LEXIS 42664, at *3 (S.D. Ohio Mar. 2, 2022) (noting rates of $600 for Andrew Biller, $550 for me, $350 for Philip Krzeski, and $150 for support staff, and holding "These rates have been found reasonable for these attorneys in a number of other cases."); *see also Brandenburg v. Cousin Vinny's Pizza*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *17 (S.D. Ohio Nov. 25, 2019) (same).

19.     Because of my expertise and experience, my firm and I can litigate and resolve wage and hour cases efficiently and successfully. The case at bar benefited from my firm's expertise, reputation, and efficiency.

20.     I am a 2011 graduate of the Benjamin N. Cardozo School of Law. I am licensed to practice in Ohio and New York, the Northern and Southern Districts of Ohio, the Eastern and Southern Districts of New York, the Western District of Michigan, the District of Colorado, the Sixth and Fourth Circuit Courts of Appeals, and several other federal district courts.

21.     Since I started practicing law, I have focused my practice has largely focused on representing employees in employment litigation. Within that space, almost all my cases are wage and hour cases.

22.     I have served as lead counsel in many wage and hour lawsuits. Although some cases are individual cases, most are class/collective actions. *Arledge v. Domino's Pizza, Inc.*, 3:16-cv-386 (S.D. Ohio); *Arp v. Hohla & Wyss Ent., LLC*, 3:18-cv-119 (S.D. Ohio); *Blose v. JARINC, LTD*, 1:18-cv-2184 (D. Col.); *Brandenburg v. Cousin Vinny's Pizza*, 3:16-cv-516 (S.D. Ohio); *Buckles v. EUBA Corp.*, 3:18-cv-355 (S.D. Ohio); *Casteel v. Antonio's Pizza, Inc.*, 1:18-cv-1277 (N.D. Ohio); *Cheeney v. Five Star Pizza Co., Inc.*, 1:18-cv-606 (W.D. Mich.); *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382 (6th Cir. 2016); *Dillow v. Home Care Network, Inc.*, 1:16-cv-612 (S.D. Ohio); *Edwards v. PJ Ops Idaho, LLC*, 1:17-cv-283 (D. Idaho);   *Forney v. Wyoming Pizza, Inc.*, 18-C-87-F (D. Wyo.); *Graham v. Chumleys of Columbus, LLC*, 2:15-cv-136 (S.D. Ohio); *Hogan v. Cleveland Ave. Restaurant*, 2:15-cv-2883 (S.D. Ohio); *Kessler v. Joarder Properties Limited Liability Company*, 1:18-cv-11867 (D. N.J.); *Martin v. MSK Management, LLC*, 2:18-cv-11874 (D. N.J.); *Mullins v. Southern Ohio Pizza, Inc.*, 1:17-426 (S.D. Ohio); *Nazih v. Café Istanbul of Columbus, LLC*, 2:17-cv-

947 (S.D. Ohio); *Pandey v. Rascal Unit, Ltd.*, 2:09-cv-550 (S.D. Ohio); *Rodino v. NRJM, Inc.*, 1:18-cv-5167 (N.D. Ill.); *Smith v. Captain George's of South Carolina*, 4:18-cv-2409 (D. S.C.); *Sullivan v. Lewisburg Pizza, LLC*, 3:18-cv-1455 (M.D. Penn.); *Thomas v. Papa John's International, Inc.*, 1:17-cv-411 (S.D. Ohio); *Wright v. Tiger Eye Pizza, LLC*, 4:18-cv-4127 (W.D. Ark.); *Young v. Rolling in the Dough, Inc.*, 1:17-cv-7825 (N.D. Ill.); *Huffman v. Team Carolinas, Inc.*, No. 4:19-cv-00034 (E.D.N.C.); *Branning v. Romeo's Pizza, Inc.*, No. 1:19-cv-2092 (N.D. Ohio); *Fox v. Team Goliath*, No. 5:19-cv-00195 (E.D. Ky.); *Chrisman v. Meadow Greens Pizza, LLC*, 5:19-cv-00155 (E.D.N.C.);  *Knerr v. Boulder BJ, LLC*, No. 1:19-cv-00799 (D.Col.); *Kennedy v. Mountainside Pizza, Inc.*, 1:19-cv-01199 (D.Col.); *Shell v. Pie Kingz, LLC*, No. 1:19-cv-02043 (N.D. Ohio); *Winsor v. TBD Pizza, et al.*, No. 1:19-cv-00992 (D.N.H.); *Young v. Rolling in the Dough, Inc.*, 1:17-cv-7825 (N.D. Ill.).

23.     My firm and I have achieved several "landmark" decisions in the context of pizza delivery class litigation, including in this case. *See Hatmaker*, No. 3:17-cv-146, 2019 WL 5725043, (S.D. Ohio November 5, 2019) (holding "As a matter of law, that the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses or (2) pay the proper mileage reimbursement rate set by the Internal Revenue Service"); *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 1367663, (S.D. Ohio Mar. 26, 2019) (denying a Papa John's franchise's motion to dismiss on several issues, including individual liability, joint employer, and liability under O.R.C. § 2307.60); *Clark v. Pizza Baker, Inc., et al.*, No. 2:18-cv-157, 2019 WL 4601930 (denying Domino's corporate entities' motion to dismiss on the issue of joint employer); *Brandenburg v. Cousin Vinny's Pizza*, No. 3:16-cv-516, 2018 WL 5800594, *4 (S.D. Ohio Nov. 6, 2018) (granting class certification under Rule 23 and finding that because

vehicles are considered "tools of the trade," 29 C.F.R. § 531.35 and a required condition of employment, Defendants were required to reimburse using the IRS rate or actual reimbursement of costs to avoid minimum wage violation). *Thomas v. Papa John's International, Inc.*, No. 1:17-cv-411, 2019 WL 4743637, at *4 (holding joint employer relationship exists between franchisor and franchisee delivery drivers at the conditional certification stage).

24.     Court have recognized that Biller & Kimble is well-versed in wage and hour cases and has successfully litigated a number of cases on behalf of restaurant workers, home health care workers, laborers, salespeople, and others. *See Gagliastre v. Capt. George's Seafood Rest.*, LP, No. 2:17cv379, 2019 U.S. Dist. LEXIS 90468, at *14 (E.D. Va. May 29, 2019); *see also Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *18 (S.D. Ohio Oct. 3, 2018) (noting class counsel's "substantial experience in wage-and-hour litigation").


Executed on March 28, 2022.

                              /s/Andrew Kimble
                              Andrew Kimble
                              BILLER & KIMBLE, LLC

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Samantha Calhoun,

Plaintiff,

v.

West Road Pizza Stop, Inc., *et al.,*

Defendants.

Case No. 20-cv-12661

Judith E. Levy
United States District Judge

Mag. Judge David R. Grand

---

### DECLARATION OF BRYN BRIDLEY RE NOTICE AND SETTLEMENT ADMINISTRATION

I, BRYN BRIDLEY, declare as follows:

1.      I am the Director of Project Management at Atticus Administration, LLC ("Atticus"), a firm providing class action claims and settlement administration services. I have extensive experience with class action notice and claims administration. I am fully familiar with the facts contained herein based upon my personal knowledge and involvement with the above-captioned action and if called upon to testify to such, I could and would competently do so.

2.      Atticus is the Claims Administrator for the above-captioned action and is responsible for carrying out the terms of the Settlement Agreement as ordered by the Court in the *Order Granting Plaintiff's Unopposed Motion for Preliminary Settlement Approval* ("Preliminary Approval Order") dated November 18, 2021.

3.      I submit this Declaration to inform the parties and the Court of settlement administration activities completed to date. This Declaration describes: (i) the method of providing notice to the Settlement Class, (ii) receipt and validation of exclusion requests and settlement objections, and (iii) the cost of claims administration.

**I.      NOTICE TO THE SETTLEMENT CLASS**

4.      On January 6, 2021, Plaintiff's Counsel provided four (4) data files to Atticus – one for each of the four Sammy's Pizza stores included in the Settlement. Each file included the name, address, phone

number, email address, SSN, total miles driven, and reimbursements paid for all current and former delivery drivers employed from September 30, 2017 to October 11, 2021 ("Class Period") at Sammy's Pizza stores owned, operated, and/or controlled by Defendants ("Class Members," the Settlement "Class," and the "Class List"). After working with Plaintiff's Counsel to address and resolves its questions on the contents of the files, the final Class List included 232 Class Members. Prior to mailing, the Class List was processed through the National Change of Address databank maintained by the United States Postal Service (USPS). This process provides address updates for individuals who have moved within the last four (4) years and who filed change of address cards with the USPS.

5.      On January 14, 2022, Atticus mailed the *Notice of Class Action Settlement* ("Class Notice" or "Notice") by U.S. first-class mail to 199 Class Members. Address information was not available or located for the remaining 33 Class Member records.  On January 18, 2022, the Notice was also sent by electronic mail to 158 Class Members whose email address were provided by Class Counsel. A true and correct copy of the Notice mailed and emailed to Class Members is attached as **Exhibit A**.

6.      Of the 199 Notices mailed, 21 were returned to Atticus as undeliverable. One (1) undeliverable record included forwarding address information and the Notice was promptly remailed. The other 20 undeliverable Notice records were sent to a professional service for address tracing and 17 address updates were obtained. Notices were promptly remailed to the 17 trace addresses received. Two (2) of the Notices remailed to trace addresses were returned to Atticus a second time and new addresses were not obtained through trace for the other three (3) undeliverable records. In total, 196 Class Members or 98.49% of the Settlement Class with address information were successfully mailed Notice.

7.      Of the 158 Notices sent via email, 13 were returned as undeliverable or "bounced". Thus 145 Class Members or 91.77% of the 158 Class Members were emailed Notice.

## II.      <u>EXCLUSION REQUESTS AND SETTLEMENT OBJECTIONS</u>

8.      Class Members had until March 15, 2022, which was the date 60 days from the date the Notices were mailed and emailed ("Notice Period"), to exclude themselves from the Settlement or file an objection to the settlement.  Atticus did not receive any requests for exclusion or objections to the settlement.

## III.    COSTS OF SETTLEMENT ADMINISTRATION

9.      Atticus agreed to administer the terms of this Settlement for $8,471. This amount includes the costs for, and time associated with printing and mailing and emailing Notice, project management, Class Member communications, opening a qualified settlement fund (QSF) account, federal and state tax reporting, and calculating, printing, and mailing settlement award payments.


**I declare under penalty of perjury under the laws of the state of Michigan that the foregoing is true and correct and executed on this 28th day of March 2022 in Mendota Heights, Minnesota.**



Bryn Bridley

DECLARATION OF BRYN BRIDLE RE NOTICE AND SETTLEMENT ADMINISTRATION

# EXHIBIT A

CALHOUN V. WEST COAST PIZZA
C/O ATTICUS ADMINISTRATION
PO BOX 64053
SAINT PAUL MN 55164



«claimant_id»
«first_name» «middle_name» «last_name»
«address1» «address2»
«city» «state» «zip»

*Calhoun v. West Road Pizza Stop, Inc., et al.*, No. 5:20-cv-12261
United States District Court for the Eastern District of Michigan

---

Notice of Class Action Settlement

---

To:   All current and former delivery drivers employed from September 30, 2017 to October 11, 2021 at the Sammy's Pizza stores owned, operated, and/or controlled by Defendants.

**You are receiving this Notice in connection with an unpaid wage lawsuit because records show that you previously worked for Defendants' Sammy's Pizza stores as a delivery driver. This Notice explains the settlement of this lawsuit and your options.**

| 1. Introduction |
|---|

On October 12, 2020, Samantha Calhoun filed a lawsuit against West Road Pizza Stop, Inc. and related entities and individuals, as the operators of four Sammy's Pizza stores in the Detroit, Michigan area. Ms. Calhoun alleged that the Defendants:

(1) under-reimbursed delivery drivers at the Sammy's Pizza stores for driving expenses by not keeping records of the delivery drivers' actual expenses, and paying less than the IRS standard business mileage rate for each mile driven, and

(2) claimed a "tip credit" from the delivery drivers' wages despite failing to meet all of the requirements for claiming a tip credit, such as failing to pay the tipped wage rate promised and requiring delivery drivers to complete non-tipped job duties.

Defendants deny these allegations, assert that they did not violate any wage and hour law, and deny that any damages are owed.

The parties have agreed to settle the lawsuit for a total of $190,000. Ms. Calhoun's principal reason for entering into the settlement agreement is the substantial cash benefit to the class of delivery drivers without the risk or delays of further litigation. The cash benefit provided under the Settlement must be

1

balanced against the risk of a smaller recovery—or, indeed, no recovery at all—if this lawsuit were to go to trial, and the likelihood of appeals that could last many months, or even years, into the future. Defendants are entering in this Settlement to avoid the risk, uncertainty, burden, and expense of further litigation.

| 2. The Settlement's Monetary Terms |
|---|

Under the Settlement, which the Court has preliminarily approved, the Defendants agree to pay $190,000 to resolve all of the claims raised in the lawsuit, including those for attorney's fees, expenses, and service awards (the "Settlement Fund"). After any award for fees and expenses, the remainder of the Settlement Fund will be distributed based on each Class Member's miles driven.

The Settlement Fund will be distributed to Class Members based on each driver's miles driven and reimbursement paid during the settlement period. This monetary amount will represent each driver's "under-reimbursed" expenses for expenses incurred making deliveries. In addition, each driver's "under-reimbursed" expenses will be multiplied by one to account for damages under the M.C.L. § 408.414 and FLSA liquidated damages.

This Notice contains only a summary of the Settlement's terms. You may obtain a full copy of the Settlement Agreement by contacting Class Counsel, listed below.

| 3. What are my options? |
|---|

You have the following options:

| Action You Can Take | Details |
|---|---|
| **Do nothing to receive your share of the Settlement.** | If you do nothing, you will receive a check for your share of the Settlement Fund. By cashing or negotiating your check, you will release all of the claims raised in this lawsuit (see below). |
| **Opt Out from the Settlement by March 15, 2022.** | If you opt out of the Settlement, you waive any benefits due to you under the Settlement. You will not, however, release any of your claims and can pursue your own individual claims against the Defendants relating to the claims raised in this Lawsuit. To opt out, you can timely and properly submit an Opt-Out Notice described below. |
| **Object to the Settlement by March 15, 2022.** | If you object to the proposed Settlement, in whole or in part, you may write to the Court and explain why you object. You cannot object to the Settlement unless you are a Class Member and you did not previously submit a request to opt out from the Settlement. If you object to the Settlement, you must file a written objection with the Clerk of Court's Office as described below. If you submit a written objection by March 15, 2022, you may (but do not have to) attend the Settlement Fairness Hearing and, at the discretion of the Court, may speak to the Court about your objection. |

| **4. Can my employer fire me or retaliate against me if I take part in the case?** |
|---|

**The law strictly forbids any employer from retaliating against you for participating in the Lawsuit or cashing your check**. Retaliation is illegal, and you are entitled to additional money should a court determine that the Defendants took any action against you or treated you differently because you joined this lawsuit or cashed your check. If you experience any retaliation, you should report it immediately to Class Counsel (identified below) or another attorney of your choice.

| **5. How do I participate in the Settlement?** |
|---|

If you worked for Defendants as a delivery driver at any time during the Class Period (September 30, 2017 to October 11, 2021), you do not need to do anything to receive your share of the Settlement Fund. You should, however, update Class Counsel and/or the Administrator (identified below) with any changes to your mailing address or contact information.

Anyone who cashes or otherwise negotiates their check will release their claims raised in this Lawsuit. The Release language is below:

> Each Class Member who cashes or otherwise negotiates his or her check releases all wage and hour claims accrued from September 30, 2017 to October 11, 2021 relating to the facts asserted in the Lawsuit that were made against Defendants or the Released Parties, including claims relating to the under-reimbursement of delivery expenses, "dual jobs" claims, overtime claims, and tip credit notice claims, including any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest, that could be pursued under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.,* the wage and hour laws of Michigan and any applicable state, local or municipal law or regulation, whether known or unknown; any and all claims for breach of contract relating to the facts asserted in this Lawsuit; any and all claims for unpaid or underpaid employee expense reimbursement relating to the facts asserted in this Lawsuit; any and all claims for unjust enrichment relating to the facts asserted in this Lawsuit; and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Defendants or Released Parties  relating to the facts asserted in this Lawsuit.

Unless you opt out (see below), all Class Members will also be subject to the following release, regardless of whether you cash or negotiate a settlement check:

> Each Class Member who does not opt-out of the Settlement releases all wage and hour claims asserted in the Lawsuit and that accrued during the Class Period, arising from the facts asserted in the Complaint, including claims relating to the under-reimbursement of delivery expenses, tip credit notice, "dual jobs" claims, and unpaid overtime claims, including any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest, that could be pursued under the wage and hour laws of Michigan and/or any other applicable state, local or municipal law or regulation, whether known or unknown, and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Defendants or Released Parties arising from the facts and claims asserted in this Lawsuit.

3

## 6. How do I opt-out of the Settlement?

You can opt out of the Settlement by requesting to be excluded from the settlement. You must do so in writing, no later than 60 days after the Claim Forms were mailed, which was **March 15, 2022**. The request must include the following: (1) the Class Member's name, (2) the Class Member's signature, (3) the date signed, (4) a statement to the effect of "I wish to opt out of the settlement in Calhoun v. West Road Pizza Stop, Inc.," and (5) a statement to the effect of "I understand that by opting out, I will receive no benefits from this Settlement." You should mail the request to either Class Counsel or the Claims Administrator. Class Counsel's address is below and the Claims Administrator's address can be found on page 6 of this Notice.

A Class Member who submits an Opt-Out Notice is not eligible to receive a share of the Settlement and will not release any claims.

You should be aware that Fair Labor Standards Act claims are limited to a two- or three-year statute of limitations, and delay in joining this case, or proceeding separately, may result in some or all of your claims expiring as a matter of law. If you pursue your claims elsewhere, you may be awarded a lesser amount than your award in this Settlement, a greater amount than your award, or $0.

## 7. How do I object to the Settlement?

Class Members may also object to the Settlement in whole or in part. Objections must be made in writing and filed, together with copies of all papers and briefs supporting the objection, with the Clerk of Court on or before **March 15, 2022**. You must also serve the papers on Class Counsel and Defendants' Counsel at the addresses below so that the papers are *received* on or before **March 15, 2022**.

| Clerk's Office | Class Counsel | Defendants' Counsel |
|---|---|---|
| Federal Building and U.S. Courthouse<br>200 E. Liberty St., Ann Arbor, MI 48104 | Philip Krzeski<br>Biller & Kimble, LLC<br>8044 Montgomery Road, Suite 515<br>Cincinnati, OH 45236<br>settlement@billerkimble.com<br>(513) 202-0710 | David Binkley<br>David A. Binkley PLLC<br>29850 Northwestern Hwy., Ste. 250<br>Southfield, MI 48034<br>Binkley800@gmail.com<br>(248) 342-3299 |

The objection must include a written statement (1) objecting to the Settlement, (2) setting for the objection's grounds, (3) setting forth the specific reasons for the objection, including any legal or evidentiary support for the objection, (4) stating whether the Class Member intends to appear and object to the Settlement at the Final Approval Hearing, and (5) containing the Class Member's name, address, and telephone number. The Class Member must sign and date the objection. The objection must include documents sufficient to prove the objector's membership in the Class, such as proof of employment. If you do not comply with these requirements, you *waive your right to object* to the Settlement and/or appear at the Settlement Fairness Hearing.

Persons who intend to object and desire to present evidence at the Settlement Fairness Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing. Such persons may be heard orally at the discretion of the Court.

4

You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Fairness Hearing. However, if you decide to hire an attorney, it will be at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Class Counsel and Defendants' Counsel at the addresses set forth above so that the notice is **received** on or before **March 15, 2022**. The Settlement Fairness Hearing may be adjourned by the Court without further written notice to the Class. Unless the Court orders otherwise, any Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement.

### 8. Do I have a lawyer in this case?

Plaintiff and the Rule 23 Class are represented by Biller & Kimble, LLC, 8044 Montgomery Road, Suite 515, Cincinnati, OH 452036 and Bos & Glazier, PLC, 990 Monroe Ave. NW, Grand Rapids, MI 49503. If you have questions or need additional information, please contact Class Counsel at 513-202-0710 or pkrzeski@billerkimble.com.

### 9. How will the lawyers be paid? How will costs be paid?

Class Counsel has prosecuted this lawsuit since September 30, 2020 and has not received payment of any attorney's fees or expenses incurred in representing the Class. Per Class Counsel's representation agreement with Ms. Calhoun, and under the terms of the Settlement Agreement, Class Counsel intends to ask that the Court award them 1/3 of the Settlement Fund ($63,333.33) in attorney's fees. In addition, Class Counsel will also ask that the Court reimburse them for the costs incurred in pursuing this case. In addition, Class Counsel will seek a service and incentive award of $5,000.00 for Ms. Calhoun. These amounts will come from the Settlement Fund allocated to Class Members. The Court has preliminarily approved Plaintiffs' counsel's request for attorneys' fees, expenses, and the incentive award. You may also hire your own attorney to represent you in this matter. If you do, it will be at your own expense.

### 10. When and where will the Court decide whether to approve the Settlement?

The Court will determine whether to approve this Settlement. In order to do so, the Court will conduct a Settlement Fairness Hearing via zoom at

> https://www.zoomgov.com/j/1616165341?pwd=MmQ0ei81MFJqNFhFbEJyUmxUc211QT09
> Passcode: 833386
> Or One tap mobile : US: +16692545252, 1616165341# or +16468287666, 1616165341#

before the Honorable Judge Judith E. Levy. Although you may attend this hearing, **you do not need to attend this hearing** in order to participate in the Settlement. At the hearing, the Court will determine:

(a)  Whether the proposed settlement is fair, reasonable, and adequate;
(b)  whether the lawsuit should be dismissed with prejudice;
(c)  whether Class Counsel's request for an award of attorney's fees and expenses should be finally approved; and
(d)  any other relief that the Court deems necessary.

The Court may approve the Settlement and/or any other related matter at or after the Settlement Fairness Hearing without further notice to Class Members.

**Please Direct Any Questions Regarding this Notice to Class Counsel.**

| **11. Please keep your address current.** |
| --- |

If you do not Opt Out, you will be mailed a check for your portion of the Settlement Fund. For that reason, it is important that you keep you mailing address current. If your mailing address changes, please inform the Claims Administrator at:

> Calhoun v. West Road Pizza
> c/o Atticus Administration
> PO Box 64053
> Saint Paul, MN 55416

You may also provide mailing address changes to Class Counsel at 513-202-0710 or pkrzeski@billerkimble.com.